J-S06045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2364 EDA 2023 |

Appeal from the Order Entered August 17, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0001371-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: N.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2365 EDA 2023 |

Appeal from the Decree Entered August 17, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000184-2023

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 11, 2024**

N.W. ("Father") appeals from the decree granting the petition filed by the Department of Human Services ("DHS") to involuntary terminate his parental rights to N.H. ("Child") (born February 2020), and the order changing Child's goal to adoption.[1]  We affirm.

---

[1] Mother consented to the involuntary termination of her parental rights.  **See** N.T., 8/17/23, at 14-20.

The relevant facts and procedural history are as follows. The Philadelphia Department of Human Services ("DHS") became involved with the family shortly after Child's first birthday due to Mother's aggressive behavior. The court adjudicated Child dependent in April 2021. In May 2023, DHS filed a petition to terminate Father's parental rights.

In August 2023, the Family Court held a hearing on DHS's petition. Crystal Atkins ("Ms. Atkins"), Community Umbrella Agency ("CUA") caseworker, testified CUA provided Father[2] with objectives including making his whereabouts known and participating in parenting classes. *See id*. at 24. CUA also spoke with Father in prison[3] twice, but he failed to comply with his objectives. Father requested Child be placed with his mother but mother did not respond to contacts. *See id*. at 24-26. Ms. Atkins testified that Child and a sibling are thriving in kinship care with a parental cousin, whom he regards as a mother, in an affectionate, loving, caring, and consistent relationship, and, further, severance of that bond would detrimentally affect Child. *See id*. at 27, 29, 32, 36-37. Father has had no in-person visits with Child or any contact since Child entered kinship care in 2021. *See id*. Child does not know Father, has never asked for Father, has not received any cards or presents

---

[2] Father is not listed as Child's father on his birth certificate. *See* N.T., 8/17/23, at 31.

[3] Father is serving a sentence of life imprisonment without the possibility of parole for second-degree murder. *See* N.T., 8/17/23, at 21-22, 28-29, 45.

from him and, in Ms. Atkins's opinion, would not be irreparably harmed by the termination of Father's parental rights. *See id*. at 29-32.[4]

Father testified he had been moved twice to different prisons and did not receive materials from Ms. Atkins until March 2023. He testified his current prison does not have classes for anger management, drugs, or mental health. *See id*. at 42-44. He said he had a prison job but never sent money for Child's support. *See id*. at 46. He testified that before his August 2022 incarceration, he did not see Child much because he did not have "a real good connection" with Mother. He testified that he has seen Child, then three and one-half years old, five or six times. *See id*. at 48.

The Family Court found clear and convincing evidence established the applicability of 23 Pa.C.S.A. § 2511(a)(1), (2), and (b), entered a decree terminating Father's parental rights, and ordered Child's goal changed to adoption. *See id*. at 53-59.

Father timely appealed and filed a timely notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), and the Family Court filed a brief notice of compliance with Rule 1925.[5]

---

[4] Ms. Atkins's testimony also established Father knew how to contact her office and failed to do so or had any family member do so. *See* N.T., 8/17/23, at 34-35.

[5] The Orphans' Court document is less than one-and-one-half pages long and fails to summarize the relevant facts or its reasoning and refers this Court to the hearing transcript.

Father presents two issues for our review:

1. Whether the trial court erred or abused [its] discretion when terminating Father's rights under 23 Pa.C.S.A. § 2511(a)(1), (2)[,] absent clear and convincing evidence[?]

2. Whether the trial court erred or abused [its] discretion when terminating Father's rights under 23 Pa.C.S.A. § 2511(b)[,] absent clear and convincing evidence, and changing [Child's] goal to adoption[?]

**See** Father's Brief at 5.

An appellate court reviews an involuntary termination order for an abuse of discretion, which limits its review to a determination of whether competent evidence supports the termination court's decree. **See In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021). An appellate court must accept the Family Court's findings of fact and credibility determinations which the record supports. **See Interest of S.K.L.R.**, 256 A.3d 1108, 1123 (Pa. 2021). Where the record supports the Family Court's factual findings, an appellate court may not disturb that court's ruling absent an error of law or abuse of discretion. **See In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021). An abuse of discretion exists where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **See id**. Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, governs the involuntary termination of parental rights. If the Family Court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, then it must assess the petition under section 2511(b), which

focuses on the Child's needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

In this case, the Family Court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a Child may be terminated after a petition filed on any of the following grounds:
>
> > (2)   The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> > * * * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the Child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(a)(2), (b).

Concerning proof of subsection 2511(a)(2), this Court has stated "[t]he grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.  Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021) (internal citation omitted).   Clear and convincing evidence is that which is so clear, direct, weighty, and convincing as to allow the trier of fact to reach a

- 5 -

clear conviction, without hesitance, of the truth of the precise facts in issue.
*See In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a Child. A Child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the Child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the Child and a genuine effort to maintain communication and association with the Child.

> Because a Child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the Child's life.

> ***Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-Child relationship to the best of his or her ability, even in difficult circumstances.*** A parent must utilize all available resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-Child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the Child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotations omitted) (emphasis added). "[A] parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized

resources available while in prison to maintain a relationship with his or her child." *See id*. Additionally, although a parent's incarceration is not a "litmus test" for termination, the length of a parent's remaining confinement "can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2)." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (internal citation omitted).[6]

Father claims he has an appeal of his conviction listed in January 2024, and Mother has obstructed his involvement with Child. *See* Father's Brief at 11-12.

The Family Court found Father saw Child five times in Child's life despite repeated periods of non-incarceration, took no active part in Child's care prior to incarceration, and his appeal would be heard nearly three years after Child entered care. It concluded DHS presented clear and convincing evidence of the applicability of section 2511(a)(2). *See* N.T., 8/17/23, at 57-58.

---

[6] A panel of this Court has found a life sentence supports the conclusion that a parent will remain unable to remedy the situation within a reasonable period of time. *See In re Adoption of N.A. N.*, 237 A.3d 451 (Pa. Super. 2020 at *7) (unpublished memorandum) (determining Father's two life sentences make it most likely he will be unable to remedy his incapacity to parent). *See* Pa.R.A.P. 126(b) (stating that unpublished memoranda filed by this Court after May 1, 2019, may be cited for their persuasive value).

We perceive no error of law or abuse of discretion in the Family Court's determination. The record demonstrates that in addition not being involved in Child's life when incarcerated, Father had minimal involvement in Child's life when not incarcerated[] and made no effort to oppose Mother's alleged obstruction. *See In re B., N.M.*, 856 A.2d at 855.

Father's second issue implicates Child's best interests under section 2511(b).

A section 2511(b) analysis focuses on the developmental, physical, and emotional needs and welfare of the Child, *see* 23 Pa.C.S.A. § 2511(b), including "[i]ntangibles such as love, comfort, security, and stability," *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012), and a consideration of the parent-child bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). "Common sense dictates that courts considering termination must also consider whether the [child is] in a pre-adoptive home and whether [he] has a bond with [his] foster parents." *See In re T.S.M.*, 71 A.3d at 268.

Father asserts DHS kept Father from Child, did not provide visitations during incarceration, and has unclean hands. *See* Father's Brief at 12-13.

The Family Court determined Child has no bond with Father, does not know him, and termination will not cause Child irreparable harm because Child is in a loving home with a family member who meets all of Child's needs. *See* N.T., 8/17/23, at 58.

Father fails to address the factors relevant to a section 2511(b) analysis. The relevant factors demonstrate Child has no relationship with Father and has a loving bond with a family caregiver who attends to his needs. *See* 23 Pa.C.S.A. § 2511(b); *In re K.M.*, 53 A.3d at 791; *In re E.M.*, 620 A.2d at 485; *In re T.S.M.*, 71 A.3d at 268. The Family Court properly evaluated the evidence.

In sum, we conclude the Family Court did not abuse its discretion when it terminated Father's parental rights under section 2511(a)(2) and (b). The effect of that determination necessarily renders moot Father's challenge to the dependency court's decision to change Child's goal to adoption. *See A.H.*, 247 A.3d at 446 (citation omitted) (holding an issue before a court is moot if in ruling on the issue the court cannot enter an order that has any legal force or effect).

Decree and order affirmed.

Judge McLaughlin joins memorandum.

Judge Dubow did not participate in the consideration or decision of this memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/11/2024